UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X

TYRONE HOLMAN,

                      Petitioner,

     -against-

ROBERT EBERT,

                      Respondent.

---------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**

06 Civ. 3618 (BMC)

**COGAN**, District Judge.

     This case presents a habeas corpus petition under 28 U.S.C. §2254 in which petitioner asserts ineffective assistance of counsel. Petitioner claims that he would not have pled guilty but for his lawyer's concededly mistaken advice that he would be eligible for parole if he acquired good time credit in prison. I hold that petitioner's federal habeas claim is time-barred; that there is no basis for equitable tolling; and that the state court's conclusion that he would have pled guilty even without the mistaken advice is neither contrary to nor an unreasonable application of Supreme Court authority. I therefore dismiss the petition.

## BACKGROUND

     On January 17, 1996, petitioner was convicted by a jury of two counts of Robbery in the First Degree, one count of Assault in the Second Degree, and three counts of Criminal Possession of a Weapon in the Second Degree for his role as a member of a group that committed a beating and robbing. As a persistent violent felony offender, he was sentenced to concurrent terms ranging from ten years to life to twenty-five years to life on each of the counts,

all to run concurrently. On May 7, 2001, the Appellate Division reversed and ordered a new trial based on the trial court's failure to impose a sanction for the loss of the arresting officer's notes.

On February 28, 2002, before retrial, the trial court, over the District Attorney's objection, offered to impose a sentence of 10 years to life in exchange for a guilty plea. On the record, defense counsel told the trial court that he had advised petitioner that after serving two-thirds of the minimum sentence, he would be eligible for parole if he received good time credit. Petitioner requested time to think about it, and the trial court adjourned the case for a week.

On March 4, 2002, petitioner accepted the offer, again over the District Attorney's objections, pleading guilty to Robbery in the First Degree and allocuting to that crime. The trial court imposed the sentence of 10 years to life, and there was no mention of "good time" credit.

Petitioner's first problem was that under state law, a prisoner is not eligible for early release based on good time credit if his sentence carries a maximum life term. His attorney had misadvised him. Petitioner found out about this misinformation on April 16, 2002, after he had begun serving his term, and after the 30-day period for a direct appeal had lapsed. Petitioner filed a motion on May 12, 2002 for, among other things, leave to file a late notice of appeal. The Appellate Division denied the motion on July 9, 2002.

Petitioner's second problem was that he filed no further legal proceedings in connection with his conviction until a year and half later, specifically, December 12, 2003, when he filed a §440.10 motion to vacate the conviction based on ineffective assistance of counsel, i.e., that his lawyer had given him bad advice in telling him that would be eligible for good time credit and therefore parole after serving two-thirds of his 10 year minimum sentence.

The state court ordered a hearing on the motion. Petitioner's claim at the hearing was essentially that he would not have accepted the guilty plea if he had known that good time credit would not make him eligible for parole. On February 28, 2006, the state court denied his motion in a reasoned decision. People v. Holman, 11 Misc.3d 1058(A), 815 N.Y.S.2d 495 (Sup. Ct. Kings Co. 2006) (table). The trial court found, and indeed it was not disputed, that petitioner's counsel had given him the wrong advice concerning his eligibility for good time credit. However, applying Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366 (1985), which in turn adopted the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984), for evaluating ineffective assistance claims in the context of guilty pleas, the state court held that petitioner was not prejudiced by his counsel's poor advice. The trial court found that petitioner had failed to prove that he would not have accepted the guilty plea had he known of his ineligibility for good time credit, and thus he did not satisfy the second Strickland factor of prejudice. There were essentially three grounds for the trial court's conclusion.

First, the trial court found petitioner's testimony incredible on the issue of whether he would have rejected the plea bargain had he received accurate advice. The trial court recited that it had considered petitioner's demeanor; that his testimony was conclusory and he had "sculpted" his testimony to fit judicial decisions; that he had made statements to the Parole Board that the reason he accepted the plea was to avoid a trial and conviction; that his interest in the outcome had affected his testimony; and that he had testified that at the time he took the plea bargain, he had not known what witnesses the district attorney would produce at a retrial, when in fact the district attorney, while petitioner was present, had stated that the witnesses were going to be flown in for trial.

Second, the trial court found that the totality of the circumstances made it unlikely that petitioner would have opted for trial. It found that the evidence against petitioner was very strong; that it had taken the first jury less than two hours to convict him on all charges; that he had no viable defense; and that the merits of the plea bargain, saving him 15 years off his prior sentence even without early release considerations, made it implausible to believe that he would have gone to trial.

Finally, the trial court held that there was no prejudice because even if the legal advice he had received proved correct, i.e., had he been eligible for parole after serving two-thirds of a ten year sentence, it was "wishful thinking" to believe he would have received parole. The court noted:

> The defendant had one major Tier 3 violation, had numerous Tier 2 violations and had an extensive criminal record other than the instant crimes. It is highly unrealistic to believe that even had the defendant received "good time" credit that the Parole Board would have released him. The fact that with virtually the same information that the Parole Board would have had if the defendant was granted "good time" credit, the Board, in 2005, denied release to the defendant is a clear indication that they would have denied release two or three years earlier. Further, the court informed the defendant [at the time he accepted the plea bargain] that his plea would constitute a parole violation and that he could potentially serve additional time. Nonetheless, the defendant accepted the plea offer.

Petitioner filed this habeas corpus case on July 17, 2006, raising the same ineffective assistance of counsel claim.

## DISCUSSION

**I.      One Year Limitations Period and Equitable Tolling**

Congress has set a one-year period of limitations for the filing of an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment. 28 U.S.C. §

2244(d)(1). This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The period excludes the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. §2244(d)(2).

I will assume arguendo that petitioner's conviction did not become final until July 9, 2002, when the Appellate Division denied his motion to file a late notice of appeal. It is questionable whether petitioner is legally entitled to this assumption. Many cases hold that mere erroneous advice from a defense lawyer, as opposed to outrageously incompetent representation, is not a ground for equitable tolling, see e.g., Urena v. U.S., No. 03 Civ. 6722, 2005 WL 1653888 (S.D.N.Y. Jul. 13, 2005) (alleged erroneous or deceptive advice concerning time to file petition for certiorari inadequate for equitable tolling), and it is questionable whether petitioner's motion for leave to file a late notice of appeal was a regular state court filing that could toll the one year period. See Satterfield v. Johnson, 434 F.3d 185 (3d Cir. 2006) (despite discretionary authority to allow late state court challenge, out of time challenge was not "properly filed" so as to obtain toll); Stokes v. Vaughn, 293 F.Supp.2d 525 (E.D.Pa. 2003), aff'd, 132 Fed.Appx. 971(3d Cir. 2005) (attempt to appeal *nunc pro tunc* insufficient to toll one year period). Excluding this much time may be particularly inappropriate because at least from April 16, 2002, petitioner knew of his attorney's erroneous advice and thus had actual or constructive knowledge that his one-year period to file his federal habeas petition might be running.

However, even giving petitioner the benefit of the doubt on these points makes no difference because he still did not file his §440.10 motion, which was a "properly filed" collateral challenge to his conviction and thus would have tolled the one-year period for filing

his federal petition had it been timely filed, until December 12, 2003, some 17 months after the Appellate Division denied his motion for leave to file a late notice of appeal. Indeed, even adding on another 90 days from July 9, 2002 for the theoretical possibility that he could have filed for certiorari with the U.S. Supreme Court, he would still have more than a year with no state court proceedings pending, and thus be beyond the one period for filing his federal petition.

Petitioner attempts to assert equitable tolling on the ground that he spent time both before and after the Appellate Division denied his motion to file a late notice of appeal trying to secure his legal papers from his lawyer and through Freedom of Information Act requests (although I note that his FOIA request does not seem to have involved the issues here). However, consistent with the principle that equitable tolling can apply only when "extraordinary circumstances prevented [a petitioner] from filing his petition on time," see Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000), virtually every court that has addressed similar claims has held that lack of access to legal papers is an inadequate ground for letting the one year period lapse. See e.g., Beltre v. U.S., 477 F.Supp.2d 649 (S.D.N.Y. 2007) ("Because the factual bases for the claims raised in Beltre's application were known to him ... Beltre has not established that his inability to obtain the transcripts warrants equitable tolling"); Pena v. Fischer, No. 06 Civ. 5427, 2007 WL 636504, *2 (S.D.N.Y. Mar. 1, 2007) (petitioner failed to show "why he needed a transcript in order to file a petition"); Bell v. Herbert, 476 F.Supp.2d 235, 247 (W.D.N.Y. 2007); Hernandez v. U.S., No. 06 Civ. 799, 2006 WL 1080406, *2 (S.D.N.Y. Apr. 24, 2006) (petitioner failed to show "how his lack of access to transcripts, his PSR or any other legal documents prevented the timely filing of this petition. Petitioner was present at his plea and sentencing hearings, thus it was not necessary for him to posses these transcripts in order to prepare" his petition); Nash v. McGinnis, No. 04 Civ. 9496, 2005 WL 1719871, *4 (S.D.N.Y. Jul. 22, 2005) ("Petitioner makes no specific

allegations explaining how an incomplete trial transcript prevented him from filing his habeas petition in a timely manner"); Lee v. Portuondo, No. 02 Civ. 3990, 2003 WL 22173078, *2 (E.D.N.Y. Aug. 29, 2003) ("the missing criminal court records did not provide a basis for equitably tolling" despite the petitioner's claim that the files were 'necessary to prepare his habeas corpus application' and that he was 'prevented from filing his habeas corpus application as a result of his attorney's withholding' of the records because the petitioner 'fails to explain why these files were necessary to filing his case within the limitations period.'"); Jimenez v. Artuz, No. 99 Civ. 335, 2003 WL 21499849, *2 (E.D.N.Y. June 16, 2003) ("lack of access to a trial transcript does not prevent a petitioner from filing a writ of habeas corpus"), citing, Crawford v. Costello, 27 Fed. Appx. 57, 59 (2d Cir. 2001) (unpublished); Jihad v. Hvass, 267 F.3d 803, 806 (8th Cir. 2001) ("Lack of access to a trial transcript does not preclude a petitioner from commencing post-conviction proceedings and therefore does not warrant equitable tolling.").

Those cases are particularly applicable here because petitioner has offered no reason why he needed the state court record to file either his federal petition or his §440.10 within the one year period. The factual basis for the relief was quite simple – that his attorney had misadvised him – and indeed there was no dispute about that. A sworn statement from petitioner as to his attorney's erroneous advice would have been sufficient to put the issue into play; the transcript would have just been evidence to support that averment, which as it turns out would not been necessary since the District Attorney conceded the point. Moreover, even if the papers he was trying to get were necessary to ultimately receive relief, nothing prevented petitioner from timely commencing his state or federal proceeding and then seeking to adjourn or stay it until such time as he could obtain the papers that he thought were necessary. Cf. Walker v. Jastremski, 430 F.3d

560, 564 n.5 (2d Cir. 2005) (*pro se* civil rights prisoner "could have filed a timely complaint and sought to amend it later after receipt of the transcript.").

Petitioner has not shown the "rare and exceptional circumstances" justifying a toll, and accordingly, his petition must be denied.

## II. The Merits

Even if petitioner's request for relief had been timely filed, it would have to be denied on the merits. The state court's decision denying his §440.10 motion was not contrary to or an unreasonable application of Hill v. Lockhart or any other Supreme Court authority. Indeed, the facts of Hill v. Lockhart are remarkably similar to the facts here – Lockhart's attorney had misadvised him that he would be eligible for parole after serving one-third of his sentence, when in fact, because of his criminal history, Lockhart was not eligible – and the Supreme Court denied relief. Moreover, in the instant case, the §440 court's factual finding that petitioner would have accepted the plea bargain even if his attorney had correctly advised him, including its findings as to petitioner's credibility, is presumptively correct under 28 U.S.C. §2254(e)(1), and petitioner has offered nothing but conclusions to overcome that presumption. See Murden v. Artuz, 497 F.3d 178, 197 (2d Cir. 2007).

As the §440 court recognized, aside from petitioner's failure to prove that he would have pled not guilty had he received accurate advice, he also had to prove that things would have been better for him had he received the right advice. The §440 court observed that petitioner's counsel did not represent to petitioner that he would get parole; the error was only as to petitioner's eligibility. That error was immaterial because in light of petitioner's numerous violations once in prison, it was unlikely that he would receive parole. The fact that he came up

for parole in 2005, with more custodial time behind him, and still could not receive parole, made it unlikely that he would have received it earlier.

It should also be noted that the §440 court arguably applied a more lenient standard to petitioner's motion than was required. Although Hill v. Lockart denied relief based on the petitioner's failure to show that he would not have pled guilty but for the erroneous legal advice, it quoted with approval the Seventh Circuit's decision in Evans v. Meyer, 742 F.2d 371, 375 (7th Cir. 1984), in which the Seventh Circuit held that "[i]t is inconceivable to us ... that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received." In other words, if petitioner had received proper advice, pled not guilty, gone to trial, and received the same or a longer sentence, he would not have been prejudiced. To satisfy the prejudice element of the Strickland test in the context of a guilty plea, petitioner would have to show that he would have been acquitted or at least received a shorter sentence after conviction. Since he failed to convince the state court that he would have pled not guilty but for the erroneous legal advice, he, like the petitioner in Hill v. Lockhart, has fallen far short of demonstrating actual prejudice.

## CONCLUSION

The petition is dismissed. No certificate of appealability is granted, petitioner having made no substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253;

Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917 (1962). The Clerk is directed to mail a copy of this Memorandum Decision and Order to plaintiff *pro se* and to enter judgment.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
December 28, 2007